AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
### for the
### Central District of Illinois ▾

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

SIM CARD, KINGSTON FLASH DRIVE, BLACK & BLUE VIVO CELL PHONE, WHITE, SILVER & BLACK APPLE CELL PHONE, GRAY APPLE CELL PHONE, WHITE & GOLD GOOGLE CELL PHONE. ALL CURRENTLY LOCATED AT FBI IN SPRINGFIELD, ILLINOIS. SEE ATTACHMENT A

)
)
)
)
)
)

Case No.   23-MJ- 6427

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SIM CARD, KINGSTON FLASH DRIVE, BLACK & BLUE VIVO CELL PHONE, WHITE, SILVER & BLACK APPLE CELL PHONE, GRAY APPLE CELL PHONE, WHITE & GOLD GOOGLE CELL PHONE, further described in Attachment A which is attached hereto and incorporated herein

located in the _____Central_____ District of _____Illinois_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B which is attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1029(a)(1), 1029(a)(3) and 1029(a)(4) and | Fraud and related activity in connection with access devices. |
| 18 U.S.C. §§ 1343 and 1349 | Wire fraud and conspiracy to commit wire fraud. |

The application is based on these facts:

Please see attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_s/ Tim K. Murphy_
*Applicant's signature*

Tim K. Murphy, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____electronic mail and telephone_____ *(specify reliable electronic means)*.

Date: 06/21/23

*Judge's signature*

City and state: Peoria, Illinois

Jonathan E. Hawley, United States Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

**IN THE MATTER OF THE SEARCH OF:**
SIM CARD,
ICCID# 04180 05785 57510 26205;
KINGSTON 64GB FLASH DRIVE,
SERIAL# 04715-761.A00LF;
VIVO CELL PHONE, BLACK AND BLUE,
NO IMEI VISIBLE;
APPLE CELL PHONE, WHITE, SILVER,
BLACK, NO IMEI VISIBLE;
APPLE CELL PHONE, GRAY,
IMEI# 353074114363102;
GOOGLE CELL PHONE, WHITE, GOLD,
IMEI# 351610582207503;
AS CURRENTLY LOCATED AT THE
FEDERAL BUREAU OF INVESTIGATION,
SPRINGFIELD DIVISION , LOCATED IN
SPRINGFIELD, ILLINOIS.

Case No. _23-mj-6427-JEH_

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, Tim K. Murphy, Special Agent of the Federal Bureau of Investigation (FBI), being first duly sworn, depose and state as follows:

### BACKGROUND

1)      I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the

following seven (7) digital devices (collectively, the "DEVICES"). The DEVICES are as follows:

  a)  DEVICE #1 : FBI Evidence Item 1B5 - SIM card, ICCID# 04180 05785 57510 26205;

  b)  DEVICE #2 : FBI Evidence Item 1B5 - Kingston 64GB flash drive, serial number 04715-761.A00LF;

  c)  DEVICE #3 : FBI Evidence Item 1B6 - ASUS notebook personal computer, model: GU603Z, serial number N1NRKD014409032;

  d)  DEVICE #4 : FBI Evidence Item 1B7 - Vivo cellular telephone, black and blue in color, dual SIM tray, no visible IMEI number;

  e)  DEVICE #5 : FBI Evidence Item 1B8 - Apple cellular telephone, white, silver, black in color, no visible IMEI number;

  f)  DEVICE #6 : FBI Evidence Item 1B9 - Apple cellular telephone, gray in color, IMEI# 353074114363102;

  g)  DEVICE #7 : FBI Evidence Item 1B10 - Google cellular telephone, white and gold in color, IMEI# 351610582207503.

    2)    I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been for over nineteen (19) years. I am currently assigned to the Quad Cities Resident Agency of the Springfield Division. During my career I have investigated complex financial crimes, Internet crimes against children, violent crime, cybercrime, and terrorism. My current investigative assignments include public corruption, crimes against children, and financial crimes including fraud. Prior to my employment with

the FBI, I was employed as an industrial design engineer at large computer manufacturer for approximately fourteen (14) years.

3)      Through my training, education, and experience, I am familiar with various fraud schemes criminal actors engage in to deceive victims and fraudulently obtain money, monetary instruments or other items of value. I know that fraud actors commonly possess and use digital devices and electronic media in furtherance of their criminal schemes and to track and/or manage information related to their schemes.

4)      Based on my training, my experience in similar investigations and search warrants of digital devices and electronic media, and the experience of other agents and officers I have spoken with, I know that it is common for fraud actors to possess and use digital devices and electronic media, including but not limited to laptop computers, cellular telephones, digital cameras, digital music players, flash drives, Secure Digital cards and other memory cards, magnetic cards, chip cards, optical discs and other digital or electronic storage media that contain evidence of their fraud schemes and other criminal activities. Additionally, fraud actors are known to use digital devices and software applications to access computer networks including the Internet, to store, access, and process data in support of their fraud schemes.

5)      I also know, based on my training and experience, and conversations with colleagues in law enforcement, security and banking professions, that evidence of fraud schemes may include but not be limited to: account information, receipts, ledgers, notes, contact lists, email, text messages, videos, computer programs,

counterfeit identity documents, counterfeit financial instruments, equipment and/or supplies commonly used in the counterfeiting of identity documents and/or financial instruments, and packaging and shipping equipment and supplies.

6)       I also know, based on my training and experience, that fraud actors maintain financial records and financial instruments related to their fraud schemes and proceeds derived from those schemes, including, but not limited to, currency, cryptocurrency, bank checks, cashier's checks, receipts from money transmitters, wire orders, money orders, stocks, bonds, precious metals, and real estate records.

7)       I also know, based on my training and experience, that fraud actors often attempt to dissociate their assets from the source of their illegal activities through various money laundering activities. To accomplish this, fraud actors may use various means, including but not limited to domestic and international financial institutions and their associated services, online financial services including cryptocurrency brokers and exchanges, digital currency wallets, gift card wallets, and gift card exchanges. Additionally, fraud actors may use ill-gotten gains to purchase products, services, and/or stored value financial instruments such as gift cards or prepaid debit cards in order to avoid law enforcement detection of these assets and attribution of the assets to the proceeds of unlawful activity.

8)       Furthermore, I know, based on my training and experience, including in this investigation, that individuals involved in fraud and money laundering, often maintain records (including financial records, receipts, notes, ledgers, mail, tax records,

and other papers in both physical and digital formats) related to their crimes, and these records are often maintained for extended periods of time, and at places where the individuals can have ready access to them, such as their residences, offices, and vehicles. In my training and experience, I also know that individuals who have committed crimes using computers often keep records of their crimes in digital or electronic format, for example on their computers, tablets, cell phones, and on networks including the Internet.

9)    The statements in this affidavit are based on my personal knowledge, information from other law enforcement personnel, and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe the digital devices obtained in this investigation , i.e. the DEVICES, contain evidence of violations of 18 U.S.C. §§ 1029(a)(1), 1029(a)(3), and 1029(a)(4), fraud and related activity in connection with access devices, and 18 U.S.C. § 1343 and 1349, wire fraud and conspiracy to commit wire fraud.

## PROBABLE CAUSE

10)    The United States, namely the FBI, is conducting a criminal investigation of YAFENG SHEN and ZENAN ZHAO for violations of 18 U.S.C. §§ 1029(a)(1),

1029(a)(3), and 1029(a)(4) fraud and related activity in connection with access devices, and 18 U.S.C. § 1343 and 1349, wire fraud and conspiracy to commit wire fraud.

11)     On April 11, 2023, the FBI was contacted by the Illinois State Police (ISP). ISP conducted a lawful traffic stop of SHEN and ZHAO as they were traveling east on Interstate 80 in Henry County, Illinois in a 2008 Honda SUV bearing California license plate number 9EXR704. The vehicle was registered to YUFANG WANG of Temple City, California. Following a positive alert for narcotics by an ISP K9 unit, a probable cause search of the vehicle was conducted by ISP.

12)     In the vehicle, ISP troopers located twenty (20) medium-sized boxes containing thousands of gift cards and prepaid debit cards. A spot check by ISP troopers of several cards from several of the boxes found that the cards had not been activated and therefore contained no stored value.

13)     Also located in the vehicle were four (4) cellular telephones, a laptop computer, mobile hotspot device for accessing the Internet, barcode scanner, read-write magnetic stripe card encoder, thermal printer, scale, rubber bands, shopping bags, packaging tape, $527.05 in U.S. currency, receipts, food, clothing and miscellaneous personal items.

14)     Located in the vehicle's center console area were approximately fifteen (15) prepaid debit cards, also called payment cards. A check by ISP Trooper Ben Reichard determined the encoded numbers did not match the numbers printed on the cards. One Visa debit card had been encoded with a MasterCard account number.

6

Checks of account balances for the account numbers on the front of the cards returned errors indicating the cards had not been activated.

15)    Also located in the vehicle was a magnetic card reader-writer device. This device, when connected to a computer, allows the user to read data from, and write data to, magnetic cards such as credit cards, gift cards or hotel room key cards. Based on your affiant's knowledge and experience, the cards located in the console area were likely encoded with stolen payment card numbers and used for travel expenses such as fuel. Fraud actors typically find it easier to re-encode existing magnetic stripe cards with stolen numbers than to produce cards from virgin stock.

16)    Approximately 14,700 cards in total were packed into the 20 cardboard boxes. The cards were: Apple gift cards, Target gift cards, and Visa, MasterCard and American Express prepaid debit cards. The cards were individually packaged for retail display and sealed within the original packaging. No obvious tampering was immediately apparent.

17)    Of the total cards located, approximately 1,800 were Apple gift cards packed into a Home Depot cardboard moving box. The cards were packaged for retail display and the packages were packed within the box carefully in two rows on three levels.

18)    The Apple gift cards were fully enclosed and not visible within the retail packaging. The retail packages were sealed with tamper-evident strips that were fully intact. Upon closer inspection of a sample of randomly selected cards by ISP troopers and your Affiant, the Apple gift cards, when removed from their retail package,

7

appeared to have been tampered with as the last several digits of the card numbers and activation codes had been scraped-off with a sharp object. Without the full access code, the card would not be redeemable by the purchaser, or the purchaser's intended gift recipient.

19) Of the total cards located, approximately 7,053 were Target gift cards packed into seven (7) Home Depot cardboard moving boxes. Several of the boxes containing the Target gift cards had United Parcel Service shipping labels addressed to various parties in California affixed to the boxes.

20) Upon closer inspection by ISP troopers and your Affiant, the Target gift cards had clearly been tampered with. The scratch-off security ink had been partially removed to reveal the 15-digit card number, eight digit access number and barcode. A label imprinted with the words, "GENTLY SCRATCH TO REDEEM AND CHECK BALANCE" and the Target logogram, had been carefully placed over the area originally covered with the scratch-off security ink. The flap of the retail packaging also appeared to have been re-glued.

21) Additionally, approximately 5,040 of the approximately 7,053 Target gift cards packaged for retail display had been organized into plastic baggies, each containing approximately 80 cards per baggie. Each baggie contained sixteen (16) bundles of five (5) cards per bundle. Each bundle of five was contained by a rubber band. Also contained within each baggie was a yellow Post-It type 3″ x 3″ note with a four-digit alphanumeric handwritten code. Each baggie was closed with a loosely tied slip knot.

22)     Of the total cards located, approximately 5,848 were Visa, MasterCard, and American Express gift cards also called "prepaid debit cards." The cards were packaged for retail display and enclosed within the packages such that the card numbers were not visible. The retail packages were sealed with tamper-evident strips that were fully intact. Upon closer inspection of a sample of randomly selected cards by ISP troopers and your Affiant, the cards did not appear to have been tampered with. A check of several the Visa and MasterCard gift cards by troopers found that the cards had not been activated and therefore had no stored value.

23)     Of the approximately 5,848 Visa, MasterCard, and American Express gift cards, approximately 3,742 of the retail packages were organized into plastic baggies containing approximately 25 to 30 cards each with a total potential face value of approximately $2,500 per baggie. Also contained within each baggie was a yellow Post-It type 3" x 3" note with a four-digit alphanumeric handwritten code. The baggies were loosely tied with a slip knot.

## DESCRIPTION OF APPARENT FRAUD SCHEME

24)     I have learned through conversations with federal law enforcement officers and corporate fraud investigators and through my online research, review of similar cases and recent media coverage of details common in gift card fraud schemes. Based on this knowledge, I believe there is probable cause to support two fraud schemes perpetrated by SHEN, ZHAO and others yet to be identified:

25)     The first scheme involves producing counterfeit access devices in violation of Title 18 U.S.C. § 1029(a)(1); the possession of fifteen (15) or more counterfeit access

9

devices in violation of § 1029(a)(3); and the possession of device-making equipment in violation of Title 18 U.S.C. § 1029(a)(4), specifically:

26) Approximately fifteen (15) prepaid debit cards were found in the vehicle's center console area by ISP. A check by an ISP trooper found the encoded numbers from the magnetic stripes did not match the numbers printed on the face of the cards. Also located in the vehicle was a magnetic card reader-writer device and laptop computer. This device, when connected to a computer, allows the user to read data from, and write data to, magnetic stripe cards such as gift cards or prepaid debit cards. Approximately 120 additional prepaid debit cards were found unpackaged and loose in two shopping bags found in the vehicle. These cards have not been checked for authenticity by your Affiant.

27) Based on your Affiant's knowledge and experience, the approximately fifteen (15) cards located in the console area meet the definition of "counterfeit access device" under Title 18 U.S.C. § 1029(e)(2), and the magnetic card reader-writer meets the definition of "device making equipment" under § 1029(e)(6).

28) The second, and more significant, scheme involves trafficking counterfeit access devices in violation of Title 18 U.S.C. § 1029(a)(1), specifically:

29) Of the approximately 1,800 Apple gift cards, a small sampling was opened and reviewed by your Affiant. All of the Apple gift cards reviewed were found to have been tampered with as the last several digits of the card numbers and activation codes had been scraped-off with a sharp object. Of the approximately 7,053 Target gift cards, a small sampling was opened and reviewed by your Affiant. All of the Target gift cards

10

reviewed were found to have been tampered with as the scratch-off security ink had been partially removed to reveal the card numbers, access numbers, and barcodes. An easily removable label imprinted with the words, "GENTLY SCRATCH TO REDEEM AND CHECK BALANCE," had been carefully placed over the area originally covered with the scratch-off security ink.

30)     Furthermore, approximately 5,040 of the approximately 7,053 Target gift cards had been bundled into groups of five (5) cards and organized into plastic baggies each containing approximately sixteen (16) bundles, or 80 cards total per baggie. Each baggie was identified with a yellow 3″ x 3″ note with a four-character alphanumeric code and closed with a loosely tied slip knot.

31)     Approximately 3,742 of the approximately 5,848 Visa, MasterCard, and American Express gift cards were also found to be organized similar to the Target gift cards. The individual retail packages were organized into plastic baggies containing approximately 25 to 30 cards each. Each baggie was identified with a yellow 3″ x 3″ note with a four-digit alphanumeric code and closed with a loosely tied slip knot.

32)     A check of a small sampling of the Apple, Target, Visa and MasterCard gift cards by ISP found that the cards had not been activated and therefore contained no stored value.

33)     I believe, based on my knowledge, training and experience, the un-activated gift cards possessed by SHEN and ZHAO appear to have been carefully opened and the account numbers and activation codes recorded for later use. The cards

were then carefully resealed in their retail packages and organized into baggies in preparation to be placed on store displays at retailers known to sell gift cards.

34)     When an unsuspecting customer purchases a compromised gift card at a retailer, a cashier activates the card and the balance purchased is associated to the card number. At the point of sale, neither the customer nor retailer know the card number and access code have been compromised. Once activated, the card balance is immediately available for purchases in physical stores or online. The card balance can also be combined with other card balances in digital "wallets," or traded or sold online or through gift card exchanges and smart phone applications designed for this purpose.

35)     Typically, several days or weeks may pass before the card is first used by the purchaser, or by the purchaser's intended gift recipient. During this time fraud actors, using the card numbers and access codes they have recorded, will deplete the card balance by purchasing Apple products or other merchandise they can easily resell, or by purchasing other gift cards they can trade or sell through online marketplaces designed for this purpose.

36)     There is no need to possess the actual physical gift card to make purchases online; only the card number and access code is required. Should the fraud actor wish to make a purchase in a physical store, the balance of a compromised card can be transferred to a card in their possession, e.g. Target gift cards, or the card number encoded onto a magnetic stripe card in their possession, e.g. Visa and MasterCard gift cards, using a magnetic stripe card read-write encoder and computer. The encoder devices are available at online retailers for less than $100.

12

37)     Checking the balance of a gift card can be accomplished online or by calling a 1-800 telephone number. The process of checking or monitoring gift card balances can also be automated through software utilities available on the Internet. The fraud actor will begin checking balances shortly after the compromised cards are placed onto store displays. It is not until the purchaser, or the purchaser's gift recipient, attempts to redeem the card and discovers a "zero balance" that fraud is even suspected. At this point, the original purchaser, or the holder of the physical gift card, has little recourse with the retailer. Due to widespread fraud, retailers such as Target Corporation have begun to put in place a number of system restrictions to thwart fraud.

38)     Based on your Affiant's direct observations, knowledge and experience, the altered Apple and Target gift cards meet the definition of "counterfeit access device" under Title 18 U.S.C. § 1029(e)(2) specifically, both the Apple and Target gift cards are cards containing account numbers and other means of account access (access codes) that can be used to obtain goods, services or things of value. All of the cards sampled by your Affiant have been altered. In the samples of the Apple gift cards, the account numbers and access codes had been partially scratched off rendering the card useless to the purchaser. In the samples of the Target gift cards, the account numbers and access codes had been revealed by scratching-off the security ink then covered over with a similar looking label not germane to the original card.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

39)     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been

13

viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

40)     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICES were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the DEVICES because:

41)     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

42)     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

43)     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic DEVICES were used, the purpose of their use, who used them, and when.

44)     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may

14

depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

45)     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

46)     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire mediums, that might expose many parts of the DEVICES to human inspection in order to determine whether it is evidence described by the warrant.

47)     *Manner of execution.* Because this warrant seeks only permission to examine the DEVICES already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## SPECIFICS OF SEARCH AND SEIZURE OF CELLULAR DEVICES

48)     This application seeks permission to search the DEVICES as described above and in Attachment A and seize records that might be found on the DEVICES as described above and in Attachment B, in whatever form they are found. One form in which the records might be found is data stored on SHEN and/or ZHAO's cellular

telephones, laptop computer or other storage media. I submit that data stored on SHEN and/or ZHAO's cellular telephones, laptop computer or other storage media, as found co-located with approximately 14,700 gift cards and prepaid debit cards, of which approximately 8,853 appeared to have been altered, and with device making equipment, there is probable cause to believe records will be stored on the DEVICES or networks, including the Internet, accessed by the DEVICES.

49)     As the DEVICES are currently in the possession of the FBI, it is requested that law enforcement officials be authorized to conduct a search of any of the DEVICES under the authority of this warrant at any time of day or night, since no intrusion into any premises will be involved. Further, although examination of the electronic DEVICES must commence within 14 days of authorization via this search warrant, it is requested, due to the complexity of searching electronic devices, that examiners be authorized to complete the search beyond the 14-day period. Searching this electronic data for the evidence described in Attachment B may require a range of data analysis techniques. Criminals can mislabel or hide files and directories; encode communications to avoid using key words; attempt to delete files to evade detection; or take other steps designed to frustrate law enforcement searches for information. These steps may require investigators to conduct more extensive searches, such as scanning areas not allocated to listed files, or opening every file and scanning its contents briefly to determine whether it falls within the scope of the warrant.

50)     Furthermore, based on interactions with SHEN and ZHAO by ISP troopers, it is anticipated that a significant amount of data and information contained

on the DEVICES will be in the Mandarin language. It is also requested, due to the logistics of arranging for suitable translation services, that examiners be authorized to complete the search beyond the 14-day period.

## CONCLUSION

51)    Based on the above information, I respectfully submit there is probable cause to believe violations of 18 U.S.C. §§ 1029(a)(1), 1029(a)(3), and 1029(a)(4), fraud and related activity in connection with access devices, and 18 U.S.C. § 1343 and 1349, wire fraud and conspiracy to commit wire fraud, involving YAFENG SHEN and ZENAN ZHAO has occurred, and evidence of these violations will be found on one or more of the DEVICES, as further described in Attachments A and B.

52)    The DEVICES are currently in the lawful possession of the FBI. Therefore, while the FBI might already have all necessary authority to examine the DEVICES, I seek this additional warrant out of an abundance of caution to be certain that an examination of the DEVICES will comply with the Fourth Amendment and other applicable laws.

53)    The DEVICES are currently in storage at the SPRINGFIELD DIVISION of the FEDERAL BUREAU OF INVESTIGATION located at 900 East Linton Avenue, Springfield, Illinois 62703. In my training and experience, I know the DEVICES have been stored in a way its contents are, to the extent material to this investigation, in substantially the same state as they were when the DEVICES first came into the possession of the FBI.

54)     I submit that this affidavit supports probable cause for a search warrant

authorizing the examination of the DEVICES described in Attachment A authorizing

the seizure of the items described in Attachment B. I therefore respectfully request this

Court issue a search and seizure warrant for these DEVICES.

Respectfully submitted,

_s/ Tim K. Murphy

Tim K. Murphy
Special Agent
Federal Bureau of Investigation

Sworn to me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and
4(d) on this 2 day of June, 2023.

JONATHAN E. HAWLEY
United States Magistrate Judge

18

## ATTACHMENT A

The property to be searched consists of seven (7) devices (collectively, the "DEVICES"). The DEVICES are as follows:

a) DEVICE #1 : FBI Evidence Item 1B5 - SIM card, ICCID# 04180 05785 57510 26205;

b) DEVICE #2 : FBI Evidence Item 1B5 - Kingston 64GB flash drive, serial number 04715-761.A00LF;

c) DEVICE #3 : FBI Evidence Item 1B6 - ASUS notebook personal computer, model: GU603Z, serial number N1NRKD014409032;

d) DEVICE #4 : FBI Evidence Item 1B7 - Vivo cellular telephone, black and blue in color, dual SIM tray, no visible IMEI number;

e) DEVICE #5 : FBI Evidence Item 1B8 - Apple cellular telephone, white, silver, black in color, no visible IMEI number;

f) DEVICE #6 : FBI Evidence Item 1B9 - Apple cellular telephone, gray in color, IMEI# 353074114363102;

g) DEVICE #7 : FBI Evidence Item 1B10 - Google cellular telephone, white and gold in color, IMEI# 351610582207503

This warrant authorizes the forensic examination of the DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.      All records on the DEVICES described in Attachment A that relate to violations of Title 18 U.S.C. §§ 1029(a)(1), 1029(a)(3), and 1029(a)(4), fraud and related activity in connection with access devices, and 18 U.S.C. § 1343 and 1349, wire fraud and conspiracy to commit wire fraud, involving YAFENG SHEN and ZENAN ZHAO, and other CO-CONSPIRATORS yet to be identified, including:

a) Contact lists containing names of associates and suppliers as well as related identifying information;

b) Types, amounts, and value of any access devices produced, altered, used or trafficked as well as dates, places, and amounts of specific transactions;

c) Any telephone call, text message data or transactional data regarding the possession, use, trafficking, alteration, or counterfeiting of access devices, including information found on third party applications;

d) Any information related to sources of stolen or counterfeit access devices (including names, addresses, telephone numbers, or any other identifying information);

e) Any information recording the above listed subjects' schedule or travel;

f) All cryptocurrency records, bank records, checks, credit card bills, account information, and other financial records;

g) Any photographs or videos relating to the illegal production, alteration, possession, or distribution of stolen or counterfeit access devices;

h) Records of Internet Protocol addresses used;

i) Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

j) Records of third-party applications including information related to travel, contacts and financial information such as transactions, account numbers, account balances, monetary transfers, and receipts.

1

As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

2